NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY GEORGES, | Civil Action No. 10-6300 (CCC) |
| Petitioner, | |
| v. | OPINION |
| GREG BARTKOWSKI, et al., | |
| Respondents. | |

**CECCHI, District Judge:**

Presently before the Court is the amended petition for a writ of habeas corpus of Ashley Georges ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging his state court murder conviction. ECF No. 45. Respondents filed a response to the petition (ECF No. 53), to which Petitioner replied (ECF No. 55). Also before the Court are Petitioner's motions seeking the appointment of counsel, an evidentiary hearing, and further discovery. ECF Nos. 44, 46-47. For the following reasons, the Court will dismiss Petitioner's non-*Brady* claims as time-barred, deny the *Brady* claim, deny Petitioner a certificate of appealability, and deny his remaining motions as moot in light of the dismissal of his petition.

**I. BACKGROUND**

Because this Court will dismiss the petition as time-barred, only a brief recitation of the procedural history of this matter is necessary for the purposes of this opinion. Following a jury trial, Petitioner was found "guilty of purposeful or knowing murder, in violation of [N.J. Stat. Ann. §] 2C:11-3a(1), (2); possession of a handgun without a permit, in violation of [N.J. Stat. Ann. §] 2C:39-5b; and possession of a weapon for an unlawful purpose, in violation of [N.J. Stat. Ann. §]

1

2C:39-4a," for which he ultimately received a sentence of life imprisonment with a thirty year parole disqualifier. ECF No. 53-8 at 2-3. Petitioner's judgment of conviction was entered on February 8, 2002. ECF No. 53-5. Petitioner appealed, and the Appellate Division affirmed his conviction and sentence by way of an opinion issued on September 29, 2003. ECF No. 53-8. The New Jersey Supreme Court thereafter denied Petitioner's petition for certification on June 4, 2004. ECF No. 53-9. Petitioner did not file a petition for certiorari.

On July 29, 2005, Petitioner filed a petition seeking post-conviction relief in the state courts. ECF No. 53-10; *see also* ECF No. 45 at 4. That petition was denied on August 28, 2007 and an order was filed on August 30, 2007. ECF No. 53-15. At some later point in or around October 2007, Petitioner submitted a request that the New Jersey public defender's office file an appeal on his behalf. ECF No. 55-1. On October 31, 2007, the public defender's office responded to that request in the form of a letter. Id. at 12. In that letter, the public defender's office informed Petitioner that a file had been opened on his case and that his matter would be referred to an appellate attorney, but that the office's "case load is overwhelming," and that the process of gathering all of the necessary documents and filing an appeal "may take several months." Id. Several months later, on January 9, 2008,[1] the public defender's office filed a notice of appeal on Petitioner's behalf. Id. at 13; ECF No. 53-16. The Appellate Division affirmed the denial of Post-Conviction relief (PCR) in an opinion issued on July 9, 2010, and the New Jersey Supreme Court denied certification on November 4, 2010. ECF Nos. 53-20, 52-21, and 53-22. Petitioner thereafter filed his initial habeas petition in this matter on December 1, 2010. ECF No. 1 at 52.

---

[1] It appears both the notice of appeal and the letter from the public defender's office informing Petitioner of the filing of the notice of appeal were mailed on January 7, 2008. The notice of appeal was not stamped filed by the Appellate Division, however, until January 9, 2008. *Compare* ECF No. 55-1 at 13-14 *with* Document 16 attached to ECF No. 53-16.

2

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination

of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B. Analysis

1. All of Petitioner's non-*Brady* claims are time-barred

Respondents argue that Petitioner's habeas petition in this matter should be dismissed as time-barred. Habeas petitions filed pursuant to 28 U.S.C. § 2254 are subject to a one year statute of limitations. *See Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013); *see also Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2013). In most instances, including this one,[2] that one year period runs from the date on which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review, including the ninety-day period for filing a petition for a writ of certiorari in the United States Supreme Court. *Ross*, 712 F.3d at 798; *Jenkins*, 705 F.3d at 84.

In this matter, Petitioner's conviction became final on September 2, 2004, ninety days after his certification petition was denied. Petitioner's one-year limitations period began to run on that date. Three hundred and thirty (330) days of the one-year limitations period ran before Petitioner ultimately filed his PCR petition on July 29, 2005. Thus, at the time Petitioner filed his PCR petition, at most thirty-six[3] (36) days of his one-year limitations period remained.

The one-year limitations period, however, is subject to statutory tolling which automatically stops the running of the limitations period while the petitioner has a properly filed

---

[2] This Court's time bar analysis applies to all of Petitioner's non-*Brady* claims. Petitioner's *Brady* claim is addressed separately below.

[3] Because 2004, the year in which Petitioner's conviction became final, was a leap year, one could argue that the one-year period should include the extra day, despite that day having passed prior to Petitioner's conviction becoming final. As Petitioner's petition is time barred regardless, this Court need not decide that question.

4

petition for PCR "pending" in the state courts. *Jenkins*, 705 F.3d at 85. A petition or appeal therefrom is "properly filed" only where it is filed in accordance with all state "time limits, no matter their form." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). A properly filed PCR petition will continue to be "pending" in the state courts following an adverse determination by the PCR trial court until the time during which he could have filed a timely direct appeal in the state courts has run. *See Swartz v. Meyers*, 204 F.3d 417, 420-24, 423 n.6 (3d Cir. 2000). In New Jersey, a notice of appeal for the denial of a PCR petition is due within forty-five days of the date on which the PCR petition was denied. N.J. Ct. R. 2:4-1. Although the time during which a PCR petition remains "pending" for statutory tolling purposes includes the time between an adverse trial-level determination and the filing of a timely notice of appeal, where a petitioner fails to file a timely notice of appeal, his petition ceases to be pending after the expiration of the time during which he could have filed a timely notice of appeal and does not resume "pending" status until the point at which a late notice of appeal is filed and accepted. *See Evans v. Chavis*, 546 U.S. 189, 197 (2006); *Swartz*, 204 F.3d at 423 n.6; *Thompson v. Admin. N.J. Stat Prison*, 701 F. App'x 118, 121-23 (3d Cir. 2017). Thus, where a New Jersey prisoner fails to file a timely notice of appeal under New Jersey's forty-five (45) day rule, his petition remains pending for the forty-five (45) days during which he could have filed a timely appeal from the denial of his PCR petition, but is not "pending" for tolling purposes between the expiration of the forty-five day period and his filing of a late notice of appeal. *Thompson*, 701 F. App'x at 122-23.

Here, Petitioner's PCR petition was denied through an order filed on August 30, 2007. Petitioner's time for filing a timely notice of appeal expired forty-five (45) days later on October

5

15, 2007.[4] As Petitioner did not file a timely notice of appeal, his one year limitations period thus began to run on October 16, 2007, and was not again statutorily tolled until his late notice of appeal was filed on January 9, 2008. During this period, eighty-six (86) more days of the one-year limitations period expired. Petitioner's time for filing a habeas petition would thereafter have been tolled until certification was denied on November 4, 2010. Twenty-seven (27) further days thereafter expired before Petitioner filed his habeas petition on December 1, 2010. Thus, four hundred and forty-three (443) statutorily un-tolled days passed between the conclusion of direct review in this matter and Petitioner's filing of his habeas petition. Absent some basis for equitable tolling, then, Petitioner's habeas petition is clearly time-barred.

The one-year habeas limitations period is subject to equitable tolling under certain limited circumstances. *Jenkins*, 705 F.3d at 88-89. The time limit should be equitable tolled "only sparingly . . . when principles of equity would make the rigid application of a limitation period unfair." *Id.* at 89 (internal quotations and citations omitted). A prisoner is therefore "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (internal quotations omitted).

In his reply in this matter, Petitioner contends that he contacted the public defender's office in a timely fashion and it was simply the "mechanism" used by the public defender's office which "cause[d] delay in the filing" of his notice of appeal on PCR. ECF No. 55 at 57. Petitioner further

---

[4] Because October 14, 2007, the date on which forty-five (45) days expired was a Sunday, the time for filing a notice of appeal would have included the following day, October 15, under the New Jersey Rules. *See* N.J. Ct. R. 1:3-1 (extending time calculations to the next day which is not a Saturday, Sunday, or holiday where the final day falls on one of those three types of days).

6

contends his notice of appeal should be considered timely either because of this mechanism or because his notice and appeal were ultimately considered *nunc pro tunc* by the Appellate Division.

Petitioner's argument falls far short of establishing a basis for tolling. As noted above, that a late notice of appeal is accepted *nunc pro tunc* does nothing to correct the fact that no state court PCR petition was "pending" during the intervening time and thus does not grant the petition statutory tolling which otherwise does not apply. Likewise, equitable tolling is inappropriate under these circumstances. As the transcript of the PCR petition makes clear, the PCR trial court told Petitioner that his petition was being denied on August 28, 2007. *See* ECF No. 54-11. The PCR judge further informed Petitioner that he had "forty-five days to appeal" and that he could request assignment of an attorney from the public defender's office. Id. at 51. When asked whether he understood this timeline and his right to appeal, Petitioner stated that he did. Id. The documents Petitioner himself submitted show that he was directly informed by the public defender's office in late October 2007, after the forty-five (45) days had already expired, that if he left the filing of the notice up to an appellate attorney in the public defender's office, his notice would likely not be filed for "several months." ECF No. 55-1 at 13. Petitioner took no action to ensure the timeliness of his appeal, and his notice was thereafter not filed until January 2008, some fifty (50) days after his one-year limitations period had expired. It is thus clear that Petitioner was made aware of the timeline applicable to his PCR appeal, failed to file a notice of appeal on his own, and was directly told that the public defender's office would likely not be able to file a timely notice of appeal – indeed, he was told they would not even file an *untimely* notice of appeal for several months. Given the transparency of the situation and Petitioner's apparent inaction in the face of known facts, this Court concludes that the "mechanism" used for filing notices of appeal in the public defender's office in this case does not amount to an extraordinary circumstance warranting

7

equitable relief. As Petitioner waited three-hundred and thirty (330) days before filing a PCR petition in the first place, and failed to file a notice of appeal after being informed of the timeline for doing so in this matter during his PCR denial, this Court further concludes that Petitioner has also failed to show reasonable diligence. Petitioner is thus clearly not entitled to equitable tolling, and all of the claims other than his *Brady* claim must therefore be dismissed as time-barred.

### 2. Petitioner's *Brady* claim is without merit

Although the parties do not address it separately in discussing the time bar issue in their briefs, this Court notes that one of Petitioner's claims – his *Brady* claim – did not arise until well after Petitioner's habeas petition was filed. The timeliness of a section 2254 petition is determined on a claim by claim basis. *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004). While all of Petitioner's non-*Brady* claims had accrued by the time his direct appeal had been completed and are time-barred as discussed above, Petitioner's *Brady* claim arises out of his contention that Hakim Kelly, who was in jail at the time of the shooting at issue in this matter, provided him with a certification in November 2014 which stated that Kelly had been identified as the shooter in a homicide which occurred in the first week of December of 1999. Petitioner contends that this event had to be the same shooting of which he was later convicted and that this statement by Hakim Kelly indicates that the chief witness[5] in his case had identified someone else prior to identifying him. Petitioner additionally argues that the state failed to turn over *Brady* material in the form of this misidentification. Because Petitioner asserts this information was not available to him until November 2014, after his initial habeas petition was filed in this matter, it would likely have not accrued until 2014 and would therefore not be untimely. *See* 28 U.S.C. § 2244(d)(1)(D) (habeas claim based on newly discovered evidence accrues for time bar purposes on the "date on which

---

[5] The chief witness in this case, Ms. Riddick, was not identified in the Kelly certification.

8

the factual predicate of the claim or claims presented could have been discovered through the exercise of reasonable diligence").

Even assuming this information was not available sooner through an exercise of reasonable diligence, Petitioner's *Brady* claim is without merit. Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, "the suppression of evidence favorable to an accused . . . violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995) (quoting *Brady*, 373 U.S. at 87). Suppressed evidence is "material" where there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 685 (1985). A petitioner seeking to make out a *Brady* claim must therefore show that evidence was suppressed, the evidence was favorable to the defense, and the evidence was material. *United States v. Risha*, 445 F.3d 398, 303 (3d Cir. 2006).

Putting aside the fact that Petitioner's *Brady* claim is procedurally barred insomuch as the Appellate Division found it to be untimely and improperly raised, the Appellate Division found Petitioner's *Brady* claim – which was also presented as a request for a new trial based on newly discovered evidence – utterly without merit. As the Appellate Division explained,

> [i]n November 2014, a certification was signed by Hakim Kelly, an inmate at the Essex County Jail at the time of the victim's death, regarding an unspecified murder committed in Newark. The certification disclosed that Kelly was identified by a witness from a photo array of suspects. Within his certification, Kelly stated, "I can honestly say that I will never forget that date of December[] 4, 1999, because that was the first time I was happy to be in jail because I was wrongly identified for a murder."

ECF No. 54-17 at 5. The Appellate Division rejected any *Brady* claim or new trial request based on this vague certification, explaining as follows:

9

> Suffice it to state that the Kelly certification is not exculpatory. It is unclear what homicide is involved or exactly who the witness is who may have wrongly identified Kelly. Even if this witness was the same witness who later identified [Petitioner], a prior incorrect identification would not have counterbalanced the overwhelming evidence against [Petitioner, including the testimony of two eye witnesses and DNA evidence linking Petitioner to a car that appeared to have been used by the shooter which was owned by Petitioner's cousin].

Id. at 12.

Having reviewed the certification in question, it is clear that Petitioner fails to state a claim for a *Brady* violation and that the rejection of his claim by the New Jersey state courts was neither contrary to nor an unreasonable application of *Brady*, its progeny, or any other clearly established federal law. Likewise, it is clear that the Appellate Division's determination was not an unreasonable application of the facts at hand. As noted by the Appellate Division, the Kelly certification is exceedingly vague – it does not identify what murder he was accused of nor who made the alleged misidentification. In the absence of any clear indication of the murder involved or the witness in question, the Kelly certification amounts to neither material or exculpatory information – it is wholly extraneous. Likewise, as noted, the certification was patently insufficient to affect the outcome of Petitioner's trial in light of the strong evidence of his guilt. Petitioner's *Brady* claim is thus without merit and must be denied to the extent that it is timely filed and not procedurally defaulted. Because this Court will dismiss all of Petitioner's non-*Brady* claims as time-barred and will deny Petitioner's *Brady* claim on the merits, Petitioner's outstanding motions (ECF Nos. 44, 46-47) are denied as moot.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has

"made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Petitioner's *Brady* claim is wholly without merit and as his other claims are clearly time-barred, Petitioner has failed to make a substantial showing of the denial of a constitutional right and he is denied a certificate of appealability.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's non-*Brady* claims are DISMISSED as time-barred, Petitioner's *Brady* claim is DENIED, Petitioner is DENIED a certificate of appealability, and Petitioner's outstanding motions (ECF Nos. 44, 46-47) are DENIED. An appropriate order follows.

**Date:** August 21, 2019

**Claire C. Cecchi, U.S.D.J.**